UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIA ELVIA ZAVALA-OROBIO, ) | |
| ) | |
| Petitioner, ) | CASE NO.   C05-635-TSZ-MJB |
| ) | (CR03-135Z) |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | REPORT AND RECOMMENDATION |
| ) | |
| Respondent. ) | |
| _____ ) | |

INTRODUCTION

Petitioner is a federal prisoner serving a 87-month sentence for conspiracy to distribute methamphetamine. She has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence, to which the government has filed a response. Having considered the briefs and the balance of the record, the court recommends, for the reasons set forth below, that petitioner's § 2255 motion be denied.

PROCEDURAL HISTORY

On March 19, 2003, petitioner and three co-defendants were charged by a federal grand jury with nine counts of drug-related offenses. (Doc. #20 in Case No. CR03-135Z). After reaching a plea agreement with the government, petitioner pled guilty to a single count of conspiracy to distribute methamphetamine. (*Id.*) As part of the plea agreement, petitioner admitted that she and the co-defendants delivered approximately 8 pounds of methamphetamine to other persons. (Doc. #106 at 5). At petitioner's sentencing hearing, the district court found

that petitioner qualified for the safety-valve provision, exempting her from the mandatory ten-year minimum sentence.  Based upon petitioner's lack of criminal history and other factors, including the quantity of drugs involved in the offense, the district court sentenced petitioner to the low-end of the applicable range, or 87 months in prison.  (Doc. #164).

Petitioner did not appeal her conviction or sentence to the Ninth Circuit Court of Appeals.  Petitioner filed the instant motion under § 2255 on April 1, 2005.  (Doc. #1 in Case No. C05-635).  The government filed its response on June 24, 2005.  (Doc. #6).  Petitioner has not filed a reply, and the matter is ready for review.

## CLAIMS FOR RELIEF

In her § 2255 motion, petitioner raises the following grounds for relief:

1. Ineffective Assistance of Counsel.

2. Violation of Plea Agreement – Rule 11.

3. Violation of Rule 32.

4. Violation of the Sixth Amendment.

(Doc. #1 at 4-8).

Under petitioner's first claim, petitioner alleges that her counsel never explained the consequences of the plea agreement to her.  (Doc. #1 at 5).  Under her second claim, petitioner alleges that counsel did not explain that by signing the plea agreement, petitioner was waiving her constitutional rights.  (*Id*. at 6.)  Because these claims are so similar, the court will address them together.  In addition, under her third claim, petitioner alleges that counsel did not explain the Presentence Report to her nor challenge inaccuracies contained within it.  (*Id*. at 7).  Because this assertion is essentially a sub-claim of ineffective assistance, the court will address it in the context of petitioner's first claim of ineffective assistance of counsel.

## DISCUSSION

### Petitioner's First, Second, and Third Claims:  Ineffective Assistance of Counsel.

Petitioner first argues that her appointed counsel provided ineffective assistance because

he allegedly never explained the consequences of the plea agreement to her. (Doc. #1 at 5). In order to prevail on a claim of ineffective assistance of counsel, petitioner must establish two elements. First, she must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 687-88 (1984). Second, she must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Regarding the first prong of the *Strickland* test, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* The test is not whether another lawyer, with the benefit of hindsight, would have acted differently, but whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 689.

Petitioner's claim that counsel did not explain the consequences of the plea agreement to her is belied by the record. The transcript of the plea hearing held on September 9, 2003, before the district court, reveals that the following exchange took place between the district court and petitioner:

> THE COURT: Have you had ample opportunity to discuss the case with your lawyer?
>
> DEFENDANT: Yes.
>
> THE COURT: And are you completely satisfied with your lawyer's representation of you in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. I'm going to tell you about some of your rights. Okay?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And I just want to be sure that you understand these rights.

REPORT AND RECOMMENDATION
PAGE 3

THE DEFENDANT: Yes.

(Doc. #6, Ex. 1 at 4).

The court then proceeded to review the constitutional rights that petitioner was waiving by pleading guilty. (*Id*. at 5-6). The court then reviewed the elements of the plea agreement with petitioner, including the facts that she admitted. (*Id*. at 8-10). At the end of this exchange, the court asked petitioner whether she agreed with those facts and she replied, "Yes." (*Id*. at 10). At the conclusion of the hearing, the court commented as follows:

> THE COURT: We have spent a great deal of time explaining to the defendant her rights and the consequences if she pleads guilty, and I'm satisfied she understands all those rights as a result of the colloquy both today and last week, and I find that the defendant did commit the crime charged in Count I.

(*Id*. at 13).

Thus, the record shows that petitioner had the consequences of her plea agreement explained to her district court and the record implies that she also had the plea agreement explained to her by counsel. Accordingly, petitioner fails to show any prejudice under *Strickland*, 466 U.S. at 694, and this claim should be denied.

Petitioner next argues that counsel allegedly did not look for "mitigating factors" to help her. However, petitioner does not identify the "mitigating factors" that escaped counsel's attention. Nor does the record suggest any. Indeed, it appears that due to her counsel's efforts, petitioner avoided the ten-year mandatory minimum sentence and received the lowest sentence possible under the sentencing guidelines. Therefore, petitioner does not show that she was prejudiced by counsel's alleged failure to find mitigating factors and this claim should be denied.

Petitioner's final claim of ineffective assistance is that her counsel did not explain the Presentence Report ("PSR") to her nor challenge inaccuracies contained within it. (Doc. #1 at 7). Specifically, petitioner alleges that the PSR contained inaccuracies regarding the quantity of drugs involved in the offense, petitioner's criminal history, and her relation to her co-defendants. (Doc. #1 at 15).

However, the record does not support petitioner's allegations. First, the quantity of drugs mentioned in the PSR – 8 pounds – was the same as the amount admitted by petitioner in her plea agreement. (*Compare* PSR at ¶ 35 *with* Doc. #106 in Case No. CR03-135, at 5). Second, the PSR stated that petitioner had *no* criminal history (PSR at ¶ 47), so it appears that petitioner did not intend to allege here that this information is *in*accurate. Third, the question of petitioner's relation to her co-defendants was not considered by the district court at sentencing, and thus, any reference in the PSR to this issue is irrelevant. Finally, the record reflects that at her sentencing, petitioner's counsel stated that he had no objections to the PSR and petitioner did not voice any disagreement. (Doc. #180 in Case No. CR03-135, at 5). Accordingly, petitioner's final claim that her counsel was ineffective for failing to challenge the PSR should be denied.

<u>Petitioner's Fourth Claim: Violation of Sixth Amendment.</u>

Although it is difficult to decipher, petitioner's fourth claim appears to be that her Sixth Amendment rights were violated when the court used factors to enhance her sentence which had not been found by a jury. (Doc. #1 at 16-17). For support, petitioner relies upon the Supreme Court decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), which held that Washington State's sentencing guidelines were unconstitutional because they permitted sentencing enhancements which were not based upon either an admission by the defendant or a finding by a jury. *Blakely*, however, applied only to the Washington sentencing scheme, not to the federal sentencing guidelines under which petitioner was sentenced. Shortly before petitioner filed the instant motion, the Supreme Court decided *United States v. Booker*, 125 S. Ct. 738 (2005), which extended *Blakely's* reasoning to the federal sentencing guidelines. The court will therefore construe petitioner's final claim as based upon *Booker* instead of *Blakely*.

The Supreme Court has been silent as to whether *Booker* applies retroactively to cases, such as petitioner's, that are on collateral review. But the Ninth Circuit – and all other circuit courts that have considered the question – has held that *Booker* does not apply retroactively to

cases on collateral review. *See United States v. Cruz*, 423 F.3d 1119 (9th Cir. 2005). Accordingly, petitioner may not rely upon *Booker* to claim that her sentence is invalid and petitioner's final claim should be denied.

<u>CONCLUSION</u>

For the foregoing reasons, petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence, lacks merit and should be denied. A proposed Order is attached.

DATED this 7th day of November, 2005.

*/s/ M. Benton*
MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE 6